THE FROHMAN AMUSEMENT CORPORATION, Appellant, *v.*
ALBERT BLINKHORN, Respondent.

First Department, June 8, 1917.

Principal and agent — suit for an accounting — evidence — proof
of oral contract of agency following prior written contract.

Where in an action by a principal against his agent to recover moneys
alleged to have been received in a fiduciary capacity and converted by
the agent, the latter offered in evidence a written contract which, while
governing his right to sell certain motion picture films manufactured by
the plaintiff and fixing his commissions, referred only to two specific
films completed by the plaintiff at the time of the contract, and it is
admitted that the defendant has accounted for the two films sold under
said written contract, it was error for the court to exclude evidence by
the plaintiff of a subsequent parol agreement giving to the defendant
the right to sell the plaintiff's future productions upon the theory that
the parol agreement was merged in the writing. The written contract,
with respect to picture films on hand at the date thereof, did not preclude
the plaintiff from proving the verbal contract with respect to its future
productions, as to which it asks an accounting by the agent.

APPEAL by the plaintiff, The Frohman Amusement Cor-
poration, from a judgment of the Supreme Court in favor
of the defendant, entered in the office of the clerk of the county
of New York on the 11th day of November, 1916, upon a
dismissal of the complaint by direction of the court at the
close of plaintiff's case.

*Herman Kahn,* for the appellant.

*Arthur F. Hansl,* for the respondent.

LAUGHLIN, J.:

This is an action by a principal against its agent to recover
moneys alleged to have been received by the agent in a
fiduciary capacity and the value of property alleged to have
been converted by the agent.

The plaintiff alleged in an amended complaint that it
was engaged in manufacturing and selling moving picture
films; that on the 12th of May, 1915, it entered into an agree-
ment with the defendant by which it gave him the right to

sell its moving picture films and agreed to pay for his services ten per cent of the gross amount received, and that he accepted the employment and agreed to account and remit to the plaintiff immediately upon receiving payment for any films sold; that thereafter and in connection with the agreement and for exhibition purposes it delivered to him four moving picture films of the value of $162.74 each, which he promised and agreed to return on demand, and that on the 3d of February, 1916, it duly demanded the return thereof, and he promised to return them forthwith, but failed so to do, and has converted them to his own use; that in the month of October, 1915, defendant in behalf of plaintiff sold the rights to present a moving picture known as " John Glayde's Honor " in the British Isles, and received therefor £1,650, and that his commissions and disbursements on the sale thereof amounted to £650, and that plaintiff was entitled to the balance, which it duly demanded, but that defendant remitted to plaintiff £400 only, and failed to remit the balance of £600, which was equivalent to $2,862 in United States money; that during the same month the defendant sold in behalf of the plaintiff the rights to present said last named moving picture and another moving picture known as " Just Out of College " in Australia, and received on account thereof $900, and the plaintiff received the balance of the purchase price, and that defendant's commissions and disbursements on said last-mentioned sale aggregated $1,215, or $315 more than he received on account of said sale, which deducted from the $2,862 owing to plaintiff on account of the other sale, left a balance due and owing to plaintiff of $2,547 in addition to the value of the films so converted.

After service of the amended complaint, plaintiff obtained an order of arrest herein on the ground that the defendant received the moneys in a fiduciary capacity and converted the films, and the order was sustained by this court, notwithstanding defendant's contention that the action is for an accounting and that he was not obliged to pay over the moneys but merely to account therefor. (*Frohman Amusement Corporation* v. *Blinkhorn,* 175 App. Div. 926.)

The president of the plaintiff testified that on the 12th of May, 1915, at the instance of the defendant, he made a

verbal agreement with him in behalf of the plaintiff by which the defendant was authorized to offer for sale all moving picture films which plaintiff then had on hand or might produce in the future, and to cable plaintiff the offers received, and if the offers were satisfactory to plaintiff he was to sell the films and remit the proceeds, less a commission of ten per cent and the cost of making for the purchaser not to exceed ten prints at three and one-half or four cents per lineal foot; that plaintiff then had two films known as " Builder of Bridges " and " Fairy and the Waif," and the verbal agreement related to those and to " everything that we made in the future," and that it was agreed that defendant " was to handle all pictures that we were to produce in the future." On the cross-examination of the witness, defendant showed that a contract in writing was made between the parties on the day the parol contract was made, and it was offered in evidence by the defendant. That contract relates only to the two films which the plaintiff then had on hand. By it the plaintiff gave the defendant the right to dispose of the English rights with respect thereto and also the right to offer and to sell positive prints thereof to purchasers and exhibitors in all parts of the world with the exception of the United States and Canada, but no sale was to be consummated without the approval of the plaintiff, and the defendant was to have a commission of ten per cent of the gross amount. It appears that the defendant sold the rights to the two motion pictures specified in the contract in writing, and duly accounted therefor; and the motion picture rights covered by that contract are not involved in this action. It was stipulated that the defendant thereafter sold for plaintiff the motion picture rights to " John Glayde's Honor " and received therefor the sum of £1,650, as alleged. The plaintiff's president further testified in answer to questions asked by the court that the picture " John Glayde's Honor " was not mentioned in the contract in writing for the reason that it had not been produced at that time, but that it was verbally agreed that defendant was to have the right to sell all of plaintiff's future productions on the same terms as those provided in the contract in writing with respect to the two pictures then on hand.

After the written contract was introduced in evidence the court, on motion of defendant's attorney, struck out the testimony relating to the agreement made between plaintiff's president and the defendant on the ground that the parol negotiations were merged in the writing, notwithstanding the contention of the attorney for the plaintiff that the rights covered by the written contract were not involved in this action and that the verbal contract was general and related to all future productions of the plaintiff, and that the rights with respect to " John Glayde's Honor " were given to the defendant for sale and were sold by him pursuant to the general parol contract negotiated on that day. After the evidence was stricken out, the attorney for the plaintiff attempted again to prove the parol contract under which he claimed the rights to " John Glayde's Honor " were sold by defendant, and the evidence was excluded and he excepted and rested without offering any evidence concerning the delivery of the films alleged to have been converted. It is perhaps to be inferred from the written contract that two of the four films alleged to have been converted were delivered to the defendant under that contract, but the writing is silent with respect to the return or final disposition of those films.

I am of opinion that the learned court erred in striking out the evidence. If the action related to the sale of rights covered by the contract in writing, of course the writing would govern and supersede all prior negotiations with respect to the matters embraced therein. The making of the written contract, however, with respect to pictures then on hand would not preclude the plaintiff from proving the verbal contract with respect to its future productions, one of which is the principal subject of this litigation.

It follows, therefore, that the judgment should be reversed and a new trial granted, with costs to appellant to abide the event.

Clarke, P. J., Dowling, Smith and Page, JJ., concurred.

Judgment reversed, new trial ordered, costs to appellant to abide event.