Simmons v Lindstrom (2025 NY Slip Op 50460(U))

[*1]

Simmons v Lindstrom

2025 NY Slip Op 50460(U)

Decided on April 7, 2025

Supreme Court, Westchester County

Everett, J.

Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.

This opinion is uncorrected and will not be published in the printed Official Reports.

Decided on April 7, 2025
Supreme Court, Westchester County

Tashera Simmons, Plaintiff,

against
Desiree Lindstrom, as Co-Administrator of the Estate of Earl Simmons, SASHA SIMMONS, as Co-Administrator of the Estate of Earl Simmons, XAVIER SIMMONS, as Co- Administrator of the Estate of Earl Simmons, SEAN SIMMONS, as Co-Administrator of the Estate of Earl Simmons, and TACOMA SIMMONS, as Co-Administrator of the Estate of Earl Simmons, Defendants.

Index No. 62907/2024

Attorney for Plaintiff:
Daniel H. Smith, Esq.
MEISTER SEELIG & FEIN, PLLC 
100 Jericho Quadrangle Ste 208
Jericho, NY 11753-2702
(516) 243-7575 
Attorney for Defendants:
Lisa M. Capone, Esq.
KURZMAN EISENBERG CORBIN & LEVER, LLP
1 N Broadway Fl 12
White Plains, NY 10601-2310
(914) 993-6042

David F. Everett, J.

Upon consideration of the papers filed in the New York State Courts Electronic Filing System (NYSCEF) Doc Nos. 13-47, relative to the motion by defendants Desiree Lindstrom and Sasha Simmons (the Co-Administrators or defendants), in their capacity as Administrators of the Estate of Earl Simmons (the Estate) to dismiss the amended complaint (CPLR 3211 [a] [1], [5], and [7]); declare that (i) the Estate is the "sole owner of all intellectual property rights (including all copyrights and trademark rights) that Earl Simmons acquired during his marriage to Plaintiff, [*2]as well as any and all other trademarks and intellectual property rights that belonged to Earl Simmons at the time of his death; (ii) except as specifically set forth in five Letters of Direction signed by Earl Simmons, Plaintiff has no income interest and is not otherwise entitled to any monies of any kind generated by or attributable to services rendered by Earl Simmons, and/or to copyrights and trademark rights Earl Simmons acquired during his marriage to Plaintiff, and/or to any other intellectual property rights owned by Earl Simmons; and (iii) Plaintiff has no approval rights or any other rights incident to any alleged ownership in connection with any intellectual property owned by Earl Simmons irrespective of when such rights were obtained or acquired by Earl Simmons"; if the motion to dismiss the action is denied, dismiss the action against Xavier Simmons, Sean Simmons, and Tacoma Simmons; and award sanctions and costs, the Court determines as follows:
Background
This is an action for declaratory judgment, money damages, and attorneys' fees. The case involves Tashera Simmons' suit against the Estate of Earl Simmons (Estate). Earl Simmons (Earl Simmons or decedent) was known by the name professional name DMX until his death in April 2021. Plaintiff seeks a declaratory judgment that the settlement agreement, entered into during her divorce from Earl Simmons in 2016, provided for ownership of 50% of decedent's intellectual property (IP), including copyright, trademark, publicity rights, and union residuals. The second cause of action alleges a breach of contract. Earl Simmons maintained through his life that the agreement only provided for royalty payments, not ownership, as do two of his children who are serving as administrators to his estate and are unrelated to plaintiff.
Defendants Desiree Lindstrom and Sasha Simmons represent the Estate. Although named, Xavier Simmons, Sean Simmons, and Tacoma Simmons were suspended as administrators in 2024 and the action as against each of them should be dismissed. They are plaintiff's children with Earl Simmons. It is unknown why they were suspended, but they did try to enter into an agreement after Earl Simmons' death to transfer the Estates' IP to plaintiff shortly before their suspension. Only Desiree Lindstrom and Sasha Simmons have appeared in this action.
In the amended complaint (NYSCEF Doc No. 15), the nature of the action is stated as follows:
This is an action for declaratory judgment, money damages, and attorneys' fees arising out of Defendant's continued refusal to acknowledge and honor the intellectual property rights duly transferred to Tashera from her ex-husband, Earl Simmons ("Earl"), in their Stipulation of Settlement and Judgment of Divorce resolving their divorce action, among other claims. Since Earl's death in 2021, the Estate of Earl Simmons (the "Estate"), by the actions of the Co-Administrators acting on behalf of the Estate, has wrongfully deprived Tashera of the substantial monetary benefits due to her by virtue of her interest in Earl's intellectual property.
The causes of action are for a declaratory judgment and breach of contract.
In the affirmation in support of the motion (NYSCEF Doc No. 14), the attorney for the Co-Administrators sets forth the following background:
4. Earl Simmons ("Earl"), a legendary hip hop artist known as "DMX" in the music and entertainment world, died intestate on April 9, 2021, survived by 14 children as his sole intestate distributees.
5. The Action was commenced by Earl's former spouse, Tashera Simmons ("Plaintiff" or "Tashera"), and arises out of the settlement of the matrimonial action resulting in Plaintiff and Earl's 2016 divorce (the "Matrimonial Action," Simmons v. Simmons, Westchester Cty. Sup. Ct. Index No. 1063/2013).
6. Plaintiff and Earl had four children together: co-defendants Xavier, Tacoma, and Sean, and non-party Praise Simmons ("Praise").
7. Following Earl's death, various petitions and cross-petitions for Temporary Letters of Administration and for full Letters of Administration were filed by: (i) Xavier, Tacoma, and Sean (sometimes hereinafter collectively referred to as "Tashera's Children" or her "Three Children"), who were then the three adult children of Earl and Plaintiff (Praise then being a minor); (ii) Sasha, an adult child of Earl and Patricia Trejo; and (iii) Desiree, Earl's fiancé at the time of his death and the mother and court-appointed Guardian of the Property of their minor son, Exodus.
8. After a brief contested proceeding for the issuance of Temporary Letters of Administration, the Westchester County Surrogate's Court (the "Surrogate's Court") entered an Order and issued Temporary Letters of Administration on October 22, 2021 to Tashera's Children (the "Temporary Letters," see Surrogate's Court, File No. 2021-1409).
9. After certain discovery in the Surrogate's Court and following negotiations amongst counsel for the Co-Administrators and Tashera's Children (sometimes hereinafter collectively referred to as "Defendants"), the Defendants entered into a Stipulation of Settlement, dated as of October 4, 2022, resolving their dueling petitions and cross-petitions for letters of administration and agreeing, inter alia, that all five of the Defendants would serve as the co-administrators of the Estate (the "Administrators' Stipulation," a copy of which is annexed as Exhibit B).
10. Sometime later, the Defendants filed a bond with Surrogate's Court, and — pursuant to that court's November 6, 2023 Order — the Temporary Letters issued to Tashera's Children were revoked and full Letters of Administration issued to the Defendants (the "Letters of Administration," a copy of which is annexed as Exhibit C).
11. Less than five months later, having found evidence of wrongdoing by Tashera's Children whilst acting under the Temporary Letters, the Co-Administrators petitioned in the Surrogate's Court, by Order to Show Cause, dated March 20, 2024, for an order, inter alia, immediately suspending and ultimately permanently removing Tashera's Children as administrators of the Estate pursuant to SCPA 711 and 719 (the "Removal Petition," see Surrogate's Court, File No. 2021-1409).
12. On the April 17, 2024 return date of the Order to Show Cause, Tashera's Children were suspended indefinitely by order from the bench pending the outcome of a proceeding to determine their permanent removal. On April 22, 2024, an Order Appointing Temporary Co-Administrators issued reflecting the suspension of Tashera's Children (the "Suspension Order," a copy of which is annexed as Exhibit D).
13. Notwithstanding the Suspension Order, and Plaintiff and her counsel's knowledge of same, the Amended Complaint in this Action names the Co-Administrators and Tashera's Children — all in the purported capacity of "Co-Administrators" — as defendants.
The Co-Administrators' attorney asserts that plaintiff "claims (the "Ownership Claims") that she has a 50 percent ownership interest in any and all intellectual property, including [*3]copyrights and trademarks, he acquired during their marriage (collectively, the "DMX Marital IP")"; that plaintiff and Earl were married on August 9, 1998 and the decedent released several albums under the professional trade name DMX during the marriage; that on January 8, 2013, a matrimonial action was commenced, and settled by stipulation, dated June 28, 2016 (2016 Settlement); that on November 3, 2017, plaintiff sought an Order holding Earl in contempt for violating the 2016 settlement and judgment, which was withdrawn and resulted in the 2018 Settlement; that "consistent with the settlement , in lieu of the QDRO Earl signed five Letters of Direction directed at Universal Music Publishing Group (UMPG), ASCAP, SoundExchange, Def Jam Records, and Her Royal Majesty's Records d/b/a Bodog Music (collectively, the "Five LODs")"; that in "the over two years between Earl's execution of the documents in accordance with the settlement and Earl's April 2021 death, pursuant to the Five LODs, Plaintiff received 50% of Earl's royalty income attributable to only those portions of certain recordings (i.e., those from between August 9, 1998 and January 8, 2013.)"; that after the divorce and 2018 Settlement, Earl continued to use the DMX Marks and other entities, and entered into agreements; that plaintiff "was not a party to the Def Jam Agreement, and did not license the DMX Marks."
With respect to the plaintiff's claim for "payment of alleged child support and spousal support arrears in the sum of $214,000 which were provided for in the 2016 Settlement," Co-Administrators' attorney argues that the 2018 Settlement addressed the child support and spousal support arrears indicating plaintiff "had earned more than she was entitled to and that the excess sums would be applied against Earl's future obligations."
A pertinent clause central to the dispute states:
The wife shall receive by QUADRO fifty percent of the husband's intellectual property rights, which shall include but not be limited to royalties from Universal Music & ASCAP, publishing, mechanical, public performances, and synchronization.
Legal Standards
Motion to Dismiss (CPLR 3211)
In Bailey v City of New York (228 AD3d 713, 714-715 [2d Dept 2024]), the Court stated the standard for review of a motion to dismiss:
On a motion to dismiss a complaint pursuant to CPLR 3211 (a) (7), the court must "accept the facts as alleged in the complaint as true, accord [the] plaintiff[ ] the benefit of every possible favorable inference, and determine only whether the facts as alleged fit within any cognizable legal theory" (Leon v Martinez, 84 NY2d 83, 87-88 [1994]; see Connaughton v Chipotle Mexican Grill, Inc., 29 NY3d 137, 141 [2017]). "At the same time, however, allegations consisting of bare legal conclusions . . . are not entitled to any such consideration. Dismissal of the complaint is warranted if the plaintiff fails to assert facts in support of an element of the claim, or if the factual allegations and inferences to be drawn from them do not allow for an enforceable right of recovery" (Connaughton v Chipotle Mexican Grill, Inc., 29 NY3d at 141-142 [citations and internal quotation marks omitted]; see Browne v Lyft, Inc., 219 AD3d 445, 446 [2023]; Everett v Eastchester Police Dept., 127 AD3d 1131, 1132 [2015]).
(See Himmelstein, McConnell, Gribben, Donoghue & Joseph, LLP v Matthew Bender & Co., Inc., 37 NY3d 169, 175 [2021]; Polite v Marquis Marriot Hotel, 195 AD3d 965, 967 [2d Dept 2021]; Coe v Toyota Motor N. Am., Inc., 150 AD3d 667, 668 [2d Dept 2017].)
Declaratory Judgment
With respect to the Court issuing declaratory relief in a motion to dismiss, in DiGiorgio v 1109-1113 Manhattan Ave. Partners, LLC (102 AD3d 725, 728 [2d Dept 2013]), the Court explained:
Pursuant to CPLR 3001, "[t]he supreme court may render a declaratory judgment . . . as to the rights and other legal relations of the parties to a justiciable controversy" (CPLR 3001). "[T]he demand for relief in the complaint shall specify the rights and other legal relations on which a declaration is requested" (CPLR 3017 [b]). A motion to dismiss the complaint in an action for a declaratory judgment "presents for consideration only the issue of whether a cause of action for declaratory relief is set forth, not the question of whether the plaintiff is entitled to a favorable declaration" (Staver Co. v Skrobisch, 144 AD2d 449, 450 [1988]; see Rockland Light & Power Co. v City of New York, 289 NY 45, 51 [1942]). Thus, "where a cause of action is sufficient to invoke the court's power to render a declaratory judgment . . . as to the rights and other legal relations of the parties to a justiciable controversy, a motion to dismiss that cause of action should be denied" (Matter of Tilcon NY, Inc. v Town of Poughkeepsie, 87 AD3d 1148, 1150 [2011] [citations and internal quotation marks omitted]; see St. Lawrence Univ. v Trustees of Theol. School of St. Lawrence Univ., 20 NY2d 317, 325 [1967]; Rockland Light & Power Co. v City of New York, 289 NY at 51). However, where the court, deeming the material allegations of the complaint to be true, is nonetheless able to determine, as a matter of law, that the defendant is entitled to a declaration in his or her favor, the court may enter a judgment making the appropriate declaration (see Hoffman v City of Syracuse, 2 NY2d 484, 487 [1957]; German Masonic Temple Assn. v City of New York, 279 NY 452, 457 [1939]; Washington County Sewer Dist. No. 2 v White, 177 AD2d 204 [1992]; Law Research Serv. v Honeywell, Inc., 31 AD2d 900, 901 [1969]). By contrast, if the material allegations of the complaint, taken as true, implicate "factual issues such that the rights of the parties cannot be determined as a matter of law, a declaration upon a motion to dismiss is not permissible" (Matter of Tilcon NY, Inc. v Town of Poughkeepsie, 87 AD3d at 1151; see Nadel v Costa, 91 AD2d 976 [1983]; Verity v Larkin, 18 AD2d 842 [1963]).
Breach of Contract
In Dee v Rakower (112 AD3d 204, 208-209 [2d Dept 2013]), the Court noted: "The essential elements for pleading a cause of action to recover damages for breach of contract are the existence of a contract, the plaintiff's performance pursuant to the contract, the defendant's breach of his or her contractual obligations, and damages resulting from the breach (see Elisa Dreier Reporting Corp. v Global NAPs Networks, Inc., 84 AD3d 122, 127 [(2d Dept) 2011]; Brualdi v IBERIA, Lineas Aereas de España, S.A., 79 AD3d 959, 960 [(2d Dept) 2010]; JP Morgan Chase v J.H. Elec. of NY, Inc., 69 AD3d 802, 803 [(2d Dept) 2010]; Furia v Furia, 116 AD2d 694, 695 [(2d Dept) 1986])." (See South Rd. Assoc., LLC v International Bus. Machs. Corp., 4 NY3d 272, 277-278 [2005]; Canzona v Atanasio, 118 AD3d 837, 838-839 [2d Dept 2014].)
Discussion
Defendants' motion to dismiss is granted in part. As an initial matter, the Court finds that collateral estoppel precludes plaintiff's claims that the 2016 settlement agreement conferred an ownership in 50% of decedent's copyright and trademark.
Collateral estoppel prohibits the litigation of claims which were necessarily decided in a [*4]prior action where the party to be precluded had a full and fair opportunity to be heard. Generally, "collateral estoppel effect will only be given to matters 'actually litigated and determined' in a prior action" (Kaufman v Eli Lilly & Co., 65 NY2d 449, 456 [1985]). However, a stipulation may also be binding in a subsequent action between the parties if the parties have manifested an intention to that effect (Matter of Susan UU. v Scott VV., 119 AD3d 1117, 1120 [3d Dept 2014]; see Schober v Hudson Val. Humane Socy. for Prevention of Cruelty to Animals, Inc., 89 AD3d 715, 717 [2d Dept 2011]).
Here, plaintiff expressly raised the issue of whether the 2016 settlement agreement conferred an ownership interest in decedent's copyright and trademark during proceedings related to plaintiff's contempt motion in 2017. It is undisputed that the subsequent consent order which concluded those proceedings did not specifically confer such ownership despite otherwise modifying the 2016 agreement.
Moreover, plaintiff testified under oath during those proceedings that she understood that the consent order concluded the litigation related to the parties' divorce, which would necessarily include any further dispute regarding interpretation of the 2016 settlement agreement. Under the circumstances of this case, the Court will not, in effect, reopen those proceedings to reinterpret the parties' 2016 settlement agreement, particularly where the party best positioned to contest a contrary interpretation is now deceased (see Matter of Hua Fan v Wen Zong Yu, 91 AD3d 952 [2d Dept 2012]; Matter of Timothy J.T. v Karen J.H., 251 AD2d 1036 [4th Dept 1998]). Even if the Court were to consider plaintiff's arguments on the merits, the Court would still hold the 2016 settlement agreement does not confer ownership in decedent's intellectual property.
In Landmark Ventures, Inc. v H5 Tech., Inc. (152 AD3d 657, 658-659 [2d Dept 2017]), the Court stated:
A court's fundamental objective in interpreting a contract is to determine the parties' intent from the language employed and to fulfill their reasonable expectations (see St. John's Univ., NY v Butler Rogers Baskett Architects, P.C., 92 AD3d 761, 764 [2012]; 131 Heartland Blvd. Corp. v C.J. Jon Corp., 82 AD3d 1188, 1189 [2011]). In so doing, "[i]t is the role of the courts to enforce the agreement made by the parties—not to add, excise or distort the meaning of the terms they chose to include, thereby creating a new contract under the guise of construction" (NML Capital v Republic of Argentina, 17 NY3d 250, 259-260 [2011]; see Riverside S. Planning Corp. v CRP/Extell Riverside, L.P., 13 NY3d 398, 404 [2009]). Although words are generally afforded their ordinary meaning, "technical words are to be given their generally accepted technical meaning" (HNC Realty Co. v Bay View Towers Apts., 64 AD2d 417, 425 [1978]), and "interpreted as usually understood by the persons in the profession or business to which they relate" (22 NY Jur 2d, Contracts § 239; see Madison Ave. Leasehold, LLC v Madison Bentley Assoc. LLC, 30 AD3d 1, 8 [2006], affd 8 NY3d 59 [2006]; Estate of Hatch v NYCO Mins., 245 AD2d 746, 747 [1997]).
The Court in Givati v Air Techniques, Inc., (104 AD3d 644, 645 [2d Dept 2013]) instructed that "a court should not read a contract so as to render any term, phrase, or provision meaningless or superfluous (see God's Battalion of Prayer Pentecostal Church, Inc. v Miele Assoc., LLP, 6 NY3d 371, 374 [2006]; Lawyers' Fund for Client Protection of State of NY v Bank Leumi Trust Co. of NY, 94 NY2d 398, 404 [2000]; Two Guys from Harrison-N.Y. v S.F.R. Realty Assoc., 63 NY2d 396, 403 [1984]; McQuade v McQuade, 67 AD3d 867, 869 [2009]; [*5]Hudson Val. Props. & Rentals v Ursuline Provincialate, E. Province of U.S., 221 AD2d 507, 509 [1995])." The Court continued that "[i]nstead, 'the entire contract must be reviewed and '[p]articular words should be considered, not as if isolated from the context, but in the light of the obligation as a whole and the intention of the parties as manifested thereby .'" (Givati at 645.) In addition, any written provision purporting to transfer intellectual property rights involving a copyright must be clear and unequivocal, and that any ambiguity or doubt concerning the scope of the rights assigned must be construed in favor of the author of the copyright (see Jim Henson Productions, Inc. v John T. Brady Assocs., Inc., 16 F Supp 2d 259, 285 [SD NY 1997]).
Here, the 2016 settlement agreement does not unequivocally assign ownership of decedent's copyrighted works or trademark and, indeed, makes no mention of ownership or title to such property. Instead, plaintiff proffers an interpretation of the phrase "intellectual property rights" to include ownership, but had that phrase meant ownership, then there would be no need to define those rights further in the subsequent clause, all tellingly limited to various categories of royalty payments (see Gary Friedrich Enterprises, LLC v Marvel Enterprises, Inc., 837 F Supp 2d 337 [SD NY 2011]). Indeed, to find that the phrase "intellectual property rights" meant ownership in this context would violate a central tenant of contract interpretation by rendering superfluous the subsequent recitation of royalty payments encompassed by the phrase (see Suffolk County Water Auth. v Village of Greenport, 21 AD3d 947,948 [2d Dept 2005]).
Under the circumstances of this case, the agreement's lack of any appraisal or valuation of decedent's intellectual property establishes that the parties did not intend to actually transfer title to the property (see Matter of Goldstein v Plotnicki, 301 AD2d 483, 484 [1st Dept 2003]), as a distributive award of ownership in a divorce dissolution would not be possible without a valuation of the intellectual property (see A.C. v J.O., 40 Misc 3d 1236[A] [Kings County 2013]). Instead, due to federal prohibition on the involuntary transfer of copyright ownership during a divorce dissolution, the rights to money derived from a copyright are subject to equitable distribution, but the exclusive rights of ownership always remain with the author (see 17 USC § 201[e]; Rodrigue v Rodrigue, 218 F3d 432 [5th Cir 2000]). Therefore, plaintiff's claims that the 2016 settlement agreement conferred ownership rights in decedent's intellectual property is dismissed, including the first cause of action seeking declaratory relief in its entirety.
Plaintiff's claim that the agreement included the transfer of decedent's publicity rights must also be dismissed since New York did not recognize an independent common-law right of publicity in 2016, and the statutory right under the Civil Rights Law (§§ 50, 51) at the time was an aspect of the right of privacy, not property (see Stephano v News Group Publs., 64 NY2d 174, 182 [1984]).
Similarly, plaintiff's claim that the settlement agreement included union residuals from various organizations is not supported by the plain language of the agreement, which omits any reference to such revenue. Moreover, since union residual payments are the product of union labor agreements (see Broadcast Arts Productions, Inc. v Screen Actors Guild, Inc., 673 F Supp 701 [SD NY 1987]), and reflect continuing payment for decedent's labor in various entertainment mediums, those payments plainly do not relate to any intellectual property rights contemplated by the agreement.
The Court finds that the "intellectual property rights co-ownership agreement" purportedly signed by plaintiff in August 2023 void ab initio since the purported co-administrators lacked legal authority to bind the Estate at the time of its execution, and, in any [*6]event, failed to adhere to the internal notice and voting process set forth in the September 2022 settlement agreement extending the temporary letters of administration.
Dismissal is premature, however, regarding plaintiff's breach of contract claim related to $214,000 in alleged child support arrears. It is well established that, pursuant to CPLR 3211 (a) (7), an affidavit used by a defendant to attack the sufficiency of a pleading will seldom if ever warrant dismissal unless such affidavit conclusively establishes that plaintiff has no cause of action (see Rovello v Orofino Realty Co., 40 NY2d 633,636 [1976]). Here, defendants submit the affidavit of decedent's former lawyer, who avers that she investigated the transfer of money pursuant to several income withholding orders in 2017 and found money an excess of $214,000 had been transferred to plaintiff. Since plaintiff disputes this contention under oath, dismissal is not appropriate at the pleading stage.
Finally, since defendants Xavier Simmons, Sean Simmons, and Tacoma Simmons were suspended from serving as co-administrators in April 2024, and therefore do not currently represent decedent's Estate, they are dismissed from this action and the caption is amended accordingly.
Conclusion
Deeming the material allegations of the complaint to be true, the Court is nonetheless able to determine, as a matter of law, that defendants are entitled to declarations in their favor. The material allegations of the complaint, taken as true, do not implicate factual issues such that the rights of the parties cannot be determined as a matter of law.
The motion by defendants Desiree Lindstrom and Sasha Simmons to dismiss the amended complaint is granted in part. The Court declares that as the Estate is the sole owner of all intellectual property rights, including all copyrights and trademark rights, which Earl Simmons acquired during his marriage to plaintiff, as well as any and all other trademarks and intellectual property rights that belonged to Earl Simmons at the time of his death; that except as specifically set forth in the five Letters of Direction signed by Earl Simmons, plaintiff has no income interest and is not otherwise entitled to any monies of any kind generated by or attributable to services rendered by Earl Simmons, and/or to copyrights and trademark rights Earl Simmons acquired during his marriage to plaintiff, or to any other intellectual property rights owned by Earl Simmons; and that plaintiff has no approval rights or any other rights incident to any alleged ownership in connection with any intellectual property owned by Earl Simmons irrespective of when such rights were obtained or acquired by Earl Simmons. That branch of the motion to dismiss the action against Xavier Simmons, Sean Simmons, and Tacoma Simmons is granted.
The remaining issue which survives dismissal is plaintiff's breach of contract claim related to $214,000 in alleged child support arrears, which is not dismissed.
The parties remaining contentions do not merit different result.
Accordingly, it is,
ORDERED that the motion to dismiss by defendants Desiree Lindstrom and Sasha Simmons is granted in part and denied in part; and it is further
ADJUDGED and DECLARED that as the Estate is the sole owner of all intellectual property rights, including all copyrights and trademark rights, that Earl Simmons acquired during his marriage to plaintiff, as well as any and all other trademarks and intellectual property rights that belonged to Earl Simmons at the time of his death; and it is further
ADJUDGED and DECLARED that except as specifically set forth in the five Letters of [*7]Direction signed by Earl Simmons, plaintiff has no income interest and is not otherwise entitled to any monies of any kind generated by or attributable to services rendered by Earl Simmons, and/or to copyrights and trademark rights Earl Simmons acquired during his marriage to plaintiff, or to any other intellectual property rights owned by Earl Simmons; and it is further
ADJUDGED and DECLARED that plaintiff has no approval rights or any other rights incident to any alleged ownership in connection with any intellectual property owned by Earl Simmons irrespective of when such rights were obtained or acquired by Earl Simmons; and it is further
ORDERED the action against Xavier Simmons, Sean Simmons, and Tacoma Simmons is dismissed and the caption is amended as follows:
X
TASHERA SIMMONS,
Plaintiff,
against-
DESIREE LINDSTROM, as Co-Administrator of the Estate
of Earl Simmons, SASHA SIMMONS, as Co-Administrator
of the Estate of Earl Simmons,
Defendants.
X
; and it is further
ORDERED that counsel for the moving parties shall serve a copy of the Decision and Order with notice of entry upon the Clerk of the Court, who is directed to mark the Court's records to reflect the change in the caption; and it is further
ORDERED that plaintiff's breach of contract claim, related to $214,000 in alleged child support arrears, is severed from the remaining causes of action which have been dismissed and shall continue.
The foregoing constitutes the Decision and Order of the Court.
Dated: April 7, 2025
White Plains, New York
ENTER:
____________________________________
HON. DAVID F. EVERETT, J.S.C.
Filed in NYSCEF